UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Elizabeth Rogers, Tina Reynolds, and     :     Case No. 1:13-cv-146
Stephanie Ochoa,     :
    :
    Plaintiffs,     :
    :
vs.     :
    :
Chipotle Mexican Grill, Inc.,     :
    :
    Defendant.     :

**ORDER**

The Court has reviewed the five motions in limine filed by Chipotle on January 9, 2016 (Docs. 113-117).  While Plaintiffs have not yet responded to the motions, the Court finds that it can rule on four of them without considering the responses.

(1) Chipotle moves to exclude evidence regarding thirteen male managers whom Chipotle argues were not similarly situated to Plaintiffs.  (Doc. 113)  Chipotle argues that these male managers were not directly supervised by Herman Mobbs when they were audited; that some of the male managers were not officially General Managers at the time of those audits; that one male manager (Bradley Pyle) actually received higher audit scores than the Plaintiffs; and/or that certain financial performance metrics cited for these male managers are irrelevant for various reasons.  Chipotle's motion notes that Plaintiffs offered evidence about 20 male employees during briefing on Chipotle's summary judgment motions, and it is unclear at this juncture what evidence Plaintiffs may offer at trial regarding this group of employees.

Chipotle raised a similar argument during summary judgment briefing, arguing

that audit scores of male managers who managed restaurants in the Cincinnati area

during the same time frame as Plaintiffs were irrelevant because the male managers

were not similarly situated.  With respect to Stephanie Ochoa's claims, this Court

particularly noted the audit scores received by Christian Armenta from an August 2011

TL audit through an SSR audit on August 21, 2012, as well as those received by Jose

Garduno and Scott Phillippo in the same general time frame.  The Court found this

evidence of comparative treatment relevant to determining whether Chipotle's

termination of Ochoa was discriminatory.  In considering a similar objection raised to

evidence cited by Tina Reynolds, this Court specifically noted: "Chipotle repeatedly

argues that its TL and SSR audits are based on objective criteria applied equally to all

managers.  Comparing the treatment of male and female Cincinnati-area managers

based on their audit results would therefore appear to the Court to be a reasonably

objective comparison."  (Doc. 92 at 43)  And with respect to Elizabeth Rogers, she cited

evidence that male managers Luis Martinez and Scott Phillippo were allowed more time

to achieve promotion to Restaurateur than she was.  Chipotle objected to this

comparison, but this Court held that "similarly situated" does not mean "identically

situated."  (Doc. 92 at 55)  The Court reaches the same conclusion about the

admissibility of this evidence at trial.  Chipotle's treatment of male managers in the

Cincinnati area in terms of audit scores and the consequences from them during the

time of the events giving rise to each of the Plaintiffs' claims are not inadmissible

because of a lack of similarity.

    That said, it is not clear what specific evidence any of the Plaintiffs intend to

introduce at trial to support their claim that Chipotle treated male managers more

favorably, and Chipotle is free to raise its objections to any of that evidence.  But the Court will deny Chipotle's motion insofar as it seeks a blanket ruling barring admission of audit scores, performance evaluations, or other evidence of the performance of male managers and Chipotle's treatment of them.

(2) Chipotle moves to exclude testimony from Meghan Verplank, Jennifer Hernandez, Kerri Breeze and Cristie Reynolds (Doc. 115).  The Court granted summary judgment against Verplank and Hernandez, and bifurcated the claims of Breeze and Reynolds for a separate trial set for April.  Chipotle argues that testimony from all four in this trial is irrelevant, that they each lack personal knowledge of events relevant to Plaintiffs' claims at issue, that it constitutes hearsay, and their testimony would be unduly prejudicial to Chipotle.  The motion argues that this sort of evidence, sometimes referred to as "me too" evidence, is admissible only if Plaintiffs establish that the factors surrounding the evidence, such as temporal proximity and the identity of the decisionmaker, that the other employees were similarly situated to Plaintiffs.

The Court granted Chipotle's motion with respect to Verplank's discrimination claims, finding that Chipotle honestly believed its reason for discharging her: Spong and Patterson visited her restaurant on the same day, Spong failed her on an SSR audit and told Patterson to go to the restaurant to address the problems he observed.  Jennifer Hernandez was terminated after three years as a General Manager, because  she was unable to maintain consistent standards of cleanliness and staffing.  The Court will not permit Verplank or Hernandez to testify about the circumstances of her termination, as they each failed to establish a genuine dispute that it was based on gender discrimination.  To that extent, Chipotle's motion is well-taken.  This ruling does not

extend to any fact-specific testimony from Verplank or Hernandez that is based on their personal knowledge and that may be relevant to the three Plaintiffs. Chipotle is free to raise specific objections to any such testimony.

This Court bifurcated the claims of Breeze and Cristie Reynolds for a separate trial, crediting Chipotle's contention that a joint trial of all five Plaintiffs would create undue prejudice and potentially confuse the jury. Chipotle's motion in limine contends that they both lack personal knowledge about Herman Mobbs and/or Brian Patterson and their allegedly discriminatory attitudes towards women. Neither of them should be permitted to offer hearsay testimony about conversations with co-plaintiffs or other Chipotle employees.

This Court enforces evidentiary rules. The Court will not permit any witness to offer hearsay testimony or personal opinion based upon hearsay, conjecture, or supposition. To that extent, Chipotle's motion is well-taken. But as with Verplank and Hernandez, fact-specific testimony based on personal knowledge of either Breeze or Cristie Reynolds that is relevant to Plaintiffs' claims is admissible. Chipotle is free to raise objections to any proposed testimony.

(3) Chipotle's next motion seeks an order excluding lay opinion testimony from all Plaintiffs' witnesses (Doc. 116). The motion contends that Plaintiffs and other identified witnesses intend to testify to their opinions and beliefs that Mobbs and Patterson preferred male managers over female managers. For example, Breeze testified that Patterson was more "friendly" with male employees during an audit at her restaurant. Similar testimony was offered by other Plaintiffs and Chipotle employees in depositions. Chipotle argues that such unsupported opinion testimony is inadmissible under Fed.

Rules of Evidence 602 and 701.

In ruling on the summary judgment motions, this Court noted that Plaintiffs' "subjective impressions that Mobbs or Patterson got along better with men, or spent more time interacting or socializing with men" was not sufficient to raise a genuine factual dispute about pretext.  (Doc. 92 at 32) This sort of subjective impression, based on observed interactions or conversations, is also not admissible at trial.  To that extent, Chipotle's motion is well-taken.

However, the Court cannot pre-determine the admissibility of any specific testimony about specific interactions between Plaintiffs or other Chipotle employees and Mobbs or Patterson until the testimony is offered and the foundation for that testimony is laid.  Chipotle is free to raise objections to any such testimony at trial.

(4) Chipotle seeks an order limiting Plaintiff Elizabeth Rogers from introducing or referring to the fact that her newborn children were born prematurely and hospitalized, that one of her children died shortly after birth, and that her brother-in-law died while she was on FMLA leave.  (Doc. 117)  Chipotle argues that Rogers' family circumstances are irrelevant to her FMLA and discrimination claims; there is no dispute that Chipotle permitted her to take leave, and her entitlement to FMLA leave is not at issue.  And any possible relevance is clearly outweighed by the prejudicial nature of this evidence, which undoubtedly would engender sympathy among the jurors.

In ruling on summary judgment, this Court concluded that several of Mobbs' statements to Rogers and to Candace Andreoni, made in connection with Rogers' termination, could be interpreted to refer to the reasons that Rogers took FMLA leave. Mobbs told Rogers at a meeting shortly after she returned to work that she was a

"mess," and "everytime I see you, you're a mess."  Mobbs made comments at a meeting (attended by Rogers) about overweight women managers, and that some female employees cried too much.  When Mobbs talked to Andreoni about terminating Rogers, Mobbs told her that Rogers was "emotional" and "not in the right mindset" to be at work.  The premature birth of twins and the loss of one of them are indeed tragic facts.  But those facts were known to Chipotle and Mobbs at the time, and they lend support to a reasonable inference that Mobbs' comments were related to her FMLA leave and the reasons for it.  The jury is entitled to hear evidence of those facts in order to place in full context the interactions between Mobbs and Rogers and the events that preceded Rogers' termination, and to reach its own conclusion whether or not the termination was causally related to her leave.  Therefore the Court will not exclude this evidence entirely.

Chipotle contends that a limiting instruction will not be effective in preventing the jury from relying largely on sympathy when reaching a verdict.  The Court disagrees; as the Court noted in bifurcating the claims in this case, "The Court's experience with juries in complex cases (civil or criminal) is that they carefully consider witness testimony and evidence, adhere to the Court's instructions, and do not hesitate to ask questions during deliberations."  (Doc. 101 at 3)   The Court will consider any appropriate limiting instruction on this issue that Chipotle wishes to offer.  But the Court will not exclude this evidence entirely, because the Court finds that the facts are relevant and the probative value of these relevant facts is not outweighed by the potential prejudice to Chipotle's defense.

In addition, the Court invited the parties to submit additional proposed voir dire,

and Chipotle has filed its proposals (Doc. 122) which the Court is considering.  Chipotle is free to inquire, within reason, about these subjects in their own voir dire of the potential jurors.

The Court will issue a ruling regarding Doc. 114, the motion with respect to Kim Sporleder, after reviewing Plaintiffs' response.

The parties are reminded that all preliminary rulings on pretrial in limine motions may be revisited and are subject to change depending upon the course of events at the trial of this case.

SO ORDERED.

DATED: January 19, 2016

s/Sandra S. Beckwith
Sandra S. Beckwith, Senior Judge
United States District Court